DOMENGEAUX, Chief Judge.
This is a maritime tort action filed in state court under the “saving to suitors” clause of 28 U.S.C. § 1333. John Rutledge, *1203 captain of the M/V PHYLISS MCCALL sued Tidewater Marine Service, Inc. for injuries he sustained when he fell on the deck of the M/V MUNSON TIDE.[1] Tidewater filed a third party demand against Rutledge’s employer, McCall’s Boat Rentals, Inc., seeking indemnity and contribution in the event Tidewater was found at fault.
The jury returned a verdict in favor of Rutledge, but assessed him with 92% fault. Tidewater was found to be 8% at fault, with no fault assessed to McCall. Rutledge filed a motion for a judgment notwithstanding the verdict, which the trial court denied, seeking a reduction in the percentage of fault assessed to him. On appeal, Rutledge asserts as error the denial of his motion for JNOV. Tidewater answered the appeal, contending the jury erred in assessing it with any fault, and in the alternative, arguing error in the rejection of its claim for indemnity or contribution against McCall and in the award of excessive general and special damages to Rutledge. For the following reasons, we affirm all aspects of the trial court judgment.
FACTS
On the evening before the accident, Rutledge moored his vessel to the outboard side of the MUNSON TIDE at the Transco Dock in Cameron Parish. This arrangement, with the port side of the PHYLISS MCCALL next to the starboard side of the MUNSON TIDE, required crew members of the PHYLISS MCCALL to traverse the deck of the MUNSON TIDE in order to reach the Transco Dock.
On December 8, 1987, Rutledge left the PHYLISS MCCALL at 6:00 a.m., when he was relieved by Captain Louis Alongis, and he drove to his brother’s home where he began packing for a vacation. Later that morning, Rutledge returned to his employer’s office to search for a box suitable for mailing books to a friend. At the office, McCall’s personnel manager, Billy Johnson, gave Rutledge permission to use a box containing some oil filters. Rutledge then decided to deliver the filters to the PHY-LISS MCCALL before using the box.
To reboard the PHYLISS MCCALL, Rutledge first had to step down from the Tran-sco Dock onto the MUNSON TIDE. The deck of the MUNSON TIDE consisted of a metal perimeter which surrounded a wooden loading area. Rutledge testified that as he stepped down onto the port side of the MUNSON TIDE, he positioned the box of filters to allow him to see where he stepped. On cross-examination, Rutledge admitted he noticed the metal perimeter of the port side of the MUNSON TIDE was “spotty wet,” and that the wooden section was also wet. Rutledge crossed the port side of the deck and the wooden loading area without difficulty; however, he slipped as he took his second step onto the metal perimeter of the starboard side. At the time he fell, Rutledge was holding the box of filters in front of him, and he did not see where he stepped.
It is undisputed that the crew of the MUNSON TIDE washed down the boat’s deck about one hour before Rutledge fell and that the latest coat of paint applied to the deck of the MUNSON TIDE did not have a non-skid base. However, at trial much conflicting evidence was adduced regarding whether there was soap on the deck, the amount of water present, and the effect of the final non-skid paint application.
ALLOCATION OF FAULT
On appeal, plaintiff argues the trial court erred in denying his motion for judgment notwithstanding the verdict on the issue of allocation of fault. The standard for the granting of a JNOV was articulated by this court in Campbell v. Mouton, 373 So.2d 237 (La.App.3d Cir.1979), appeal after remand, 412 So.2d 191 (La.App.3d Cir.1982), where we adopted the following language from Boeing v. Shipman, 411 F.2d 365 (5th Cir.1969):
*1204 On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence — not just that evidence which supports the non-mover’s case — but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.
In applying this standard, the court cannot weigh the evidence, pass on the credibility of witnesses, or substitute its judgment of facts for that of the jury. Silliker v. St. Landry Police Jury, 520 So.2d 880 (La.App.3d Cir.1987).
Rutledge was not a member of the crew of the MUNSON TIDE. Therefore, he may not avail himself of the “featherweight” burden of proof in a Jones Act case, nor is he entitled to the warranty of seaworthiness from Tidewater. The duty Tidewater owed to Rutledge is found in the case of Kermarec v. Campagnie Generate Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959), which held the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interest the duty of exercising reasonable care under the circumstances. Generally, there is no duty to warn of an obvious danger. Marin v. Myers, 665 F.2d 57 (4th Cir.1981), cert. denied, 456 U.S. 906, 102 S.Ct. 1752, 72 L.Ed.2d 163 (1982).
In the instant case, the jury was required to make many credibility determinations before reaching the question of whether Tidewater breached the duty owed Rutledge. Rutledge testified that after he fell he noticed a soapy film on the deck. This testimony was corroborated by Captain Louis Alongis of the PHYLISS MCCALL and by Robert Walker, another McCall employee. However, Calvin Amos, first mate of the MUNSON TIDE and Billy Johnson, personnel manager of McCall’s, denied seeing any soap on the ship. Two accident reports prepared on the date of the accident did not attribute Rutledge’s fall to the presence of soap. A third accident report prepared by Captain Alongis did mention soap; however, this report was not found until several months after the accident and it was turned in to McCall by Rutledge.
Conflicting testimony also existed regarding the amount of water on the deck of the MUNSON TIDE. Rutledge described the deck as “spotty wet.” Johnson and Alongis said there was standing water of one-half to three-quarter inches over the entire deck.
The jury was also presented with conflicting testimony on whether the application of paint without a non-skid base rendered the deck of the MUNSON TIDE defective. It was undisputed that the crew of the MUNSON TIDE applied a coat of nonskid paint shortly before the accident; however, the paint applied the day before the accident did not have a non-skid base. Captain Alongis of the PHYLISS MCCALL testified that for safety reasons he instructed his crew to use a non-skid paint for every application. Calvin Amos, a crewmember of the MUNSON TIDE, testified that buildup caused by continued use of non-skid paint would actually reduce the non-skid quality of the deck’s surface.
Reviewing the above, we cannot conclude that the facts and their inferences point so overwhelmingly in favor of the plaintiff that reasonable men could not have arrived at a contrary verdict. The record contains ample evidence to support a finding, depending upon the jury’s credibility determinations, that soap was not on the deck and that Rutledge did not proceed with due care for his own safety. The jury was also presented with sufficient evidence to conclude that the deck of the MUNSON TIDE was not defective. We find no error in the *1205 trial court’s denial of the plaintiff’s motion for JNOV and in the jury verdict.
INDEMNITY OR CONTRIBUTION
In answering the appeal, Tidewater contends the jury erred in not awarding Tidewater indemnification or contribution from McCall’s Boat Rentals. Tidewater argues McCall breached its duty to provide Rutledge with a safe manner of ingress and egress from the PHYLISS MCCALL.
We agree that McCall owed such a duty to Rutledge; however, based upon uncontradicted testimony in the record, we find no breach of that duty. Rutledge testified that he moored the PHYLISS MCCALL along side the MUNSON TIDE 30 or 40 times and that he traversed the deck of the MUNSON TIDE at least that many times without any problems. Louis Alongis testified that, as captain of the PHYLISS MCCALL, he believed tying up to the MUNSON TIDE provided a safe means of disembarking from his vessel. Captain Frank Whittle, of the MUNSON TIDE, testified that tying up to another vessel was a common practice in the oil field industry. Based upon the above, we find no error in the jury’s determination that McCall’s Boat Rentals was free from fault in the accident which resulted in the plaintiff’s injuries. See, Guillory v. Cameron Offshore Services, Inc., 422 So.2d 592 (La.App.3d Cir.1982).
DAMAGES
The jury awarded Rutledge a total of $124,948.00, which amount was itemized as follows: $50,000 in general damages, $60,000 in future lost wages, $4,000 in future medical expenses, $3,948.00 in past medicals, and $7,000 in past wages. In its final assignment of error, Tidewater contends the awards for future lost wages and future medical expenses are speculative and the award for general damages is excessive.
Rutledge was treated for injuries to his right knee by Dr. Thomas Ryan of Washington, D.C. Confronted with initial findings of a loose bori'e fragment between the knee cap and the thigh bone, Dr. Ryan performed an immediate arthroscopy. The surgery revealed further damage to the under surface of the patella, with pieces of cartilage and bone in that area.
With the aid of a brace, Rutledge was able to return to work with McCall in February of 1989 and later as a first mate with other boating companies. However, Dr. Ryan stated that if Rutledge continued with this nonsedentary employment, his condition would progressively worsen. Dr. Ryan recommended that Rutledge immediately cease his present employment and adopt a sedentary occupation. Otherwise Rutledge will continue to erode the back of his patella, with a resulting increase in pain and other symptoms.
Based upon Dr. Ryan’s uncontradicted testimony, we find the jury did not err in awarding future lost wages and medical expenses. Nor do we find error in the award of general damages. The evidence supports the finding that Rutledge’s injury was extremely painful and that Rutledge can maintain his current level of physical activity only by wearing one of the two braces which he described at trial.
For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed one-third to plaintiff, John Rutledge, and two-thirds to defendant, Tidewater Marine Service, Inc.
AFFIRMED.

. Rutledge also named as defendant Tidewater Marine Towing, Inc., but this party was dismissed on directed verdict after a stipulation that Tidewater Marine Service, Inc. was the proper defendant.