619 So.2d 738 (1993)
Rosemary RUBINO
v.
LOUISIANA STADIUM AND EXPOSITION DISTRICT, Facility Management of Louisiana, Inc., and ABC Insurance Company.
No. 92-CA-2530.
Court of Appeal of Louisiana, Fourth Circuit.
May 27, 1993.
*739 D. Douglas Howard, Jr., Shawn C. Pedersen-Reed, New Orleans, for plaintiff-appellee.
Carl A. Butler, Bryan, Jupiter, Lewis & Blanson, New Orleans, for defendants-appellants.
Felix C. Orsini, Asst. City Atty., Kathy L. Torregano, Chief Deputy City Atty., William D. Aaron, Jr., City Atty., New Orleans, for defendants-appellees.
Before SCHOTT, C.J., and BARRY and JONES, JJ.
SCHOTT, Chief Judge.
This is a slip and fall case on a sidewalk adjacent to a ramp providing access to the Louisiana Superdome. Its owner, Louisiana Stadium and Exposition District (LSED) has appealed from a judgment in favor of plaintiff and claims that 1) the City of New Orleans owned and was responsible for the sidewalk where plaintiff fell; 2) plaintiff failed to prove there was a defect in the sidewalk; 3) plaintiff was at fault herself; and 4) the quantum of damages awarded by the trial court is excessive. We affirm.
On the day of the accident plaintiff and her husband made a tour of the Superdome. They exited the facility on a pedestrian bridge which led to Poydras Street and in a "T" formation sloped to the ground in opposite directions at right angles. Plaintiff and her husband took the ramp to the right, and at the foot of the ramp they turned right toward a street called North Stadium Drive which is parallel to Poydras Street and runs along the stadium and under the pedestrian bridge plaintiff had taken. After turning and facing North Stadium Drive they turned right again and walked along a sidewalk between North Stadium Drive on their left and the ramp they had taken on their right. After walking a few steps plaintiff tripped on an elevation between two sections of sidewalk and fell, sustaining injuries.
By its first specification of error LSED contends that the sidewalk where plaintiff fell is owned by the City and as owner the *740 City is liable to plaintiff. When the stadium was constructed the City granted to LSED a servitude over its property for the construction of the ramps. The entire area under the ramps consists of a median between Poydras Street and North Stadium Drive. The City ordinance granting the servitude for the ramps called for the construction of a pedestrian bridge from the stadium toward Poydras Street about fifty feet wide "and the right to erect foundations and access ramps therefor in the proposed median...." The ramps referred to are those leading to the ground perpendicular to and going in opposite directions parallel to Poydras Street. The issue is whether the sidewalk which parallels the ramp, the place where plaintiff fell, just a few steps from the foot of the ramp, is a part of this servitude. The trial court concluded that it was and this conclusion is supported by the record.
In the first place the wording of the servitude clearly contemplates inclusion of the area in close proximity to the ramps. A fair interpretation of the ordinance and the plan of the area is that the intention was to grant LSED a servitude over the entire area between North Stadium Drive and Poydras Street. In practice LSED has assumed full responsibility for the maintenance of this area. This is consistent with the notion that the owner of the servient estate is not required to maintain the estate in the absence of a contract. LSA-C.C. art. 651.
Nonetheless, LSED argues that the City, as owner of the sidewalk, is liable to plaintiff pursuant to Houssiere v. Lafayette Ins. Co., 559 So.2d 903 (La.App. 4th Cir.1990). In that case the court considered the liability of the City vis a vis the owner of the adjacent property to a pedestrian who tripped and fell on a defective sidewalk. As in the present case the claim was predicated on C.C. art. 2317 which makes the custodian of a thing strictly liable to one who is injured because of a defect in the thing. The court rejected the notion that the adjacent property owner had custody of the sidewalk as a matter of law and held that the sidewalk was either owned by the City or in the City's care and custody.
The distinction in the present case is that LSED has a servitude over the sidewalk and has maintained care and custody over it from the time it constructed the stadium. While the City is the owner of the sidewalk, since LSED has care, custody and control over it, LSED and not the City would be liable under Art. 2317. Griffin v. Foti, 523 So.2d 935 (La.App. 4th Cir.) writ den. 531 So.2d 272. Plaintiff also carried her burden of proving that LSED had constructive notice of the defect as required by R.S. 9:2800. The evidence showed that LSED's employees made regular inspections of the area surrounding the stadium which LSED undertook to maintain. This area included the sidewalk where plaintiff fell. In these inspections maintenance personnel either saw or should have seen this elevation which caused plaintiff to fall. LSED had a reasonable opportunity to remedy the defect and failed to do so.
By its next two specifications of error LSED contends that plaintiff failed to prove a defect and was contributorily negligent in any event. The trial court's findings and conclusions on these issues are not manifestly erroneous. Plaintiff and her husband established by their own testimony supported by moving and still photographs that there was a change in elevation across the sidewalk between sections of concrete of between two and three inches. Plaintiff was walking at a normal pace in good walking shoes when she tripped on the elevation. There is nothing in the record to show any carelessness or negligence on her part. She carried her burden of proof to prove by a preponderance of the evidence that there was a defect in the sidewalk which constituted an unreasonable risk of harm under the circumstances and LSED failed to prove any comparative fault on her part.
Finally LSED argues the general damage award of $60,000 was excessive. Plaintiff suffered cuts and bruises in the accident and injured her knee which required arthroscopic surgery for torn ligaments. *741 The accident occurred in November 1987 but because of her own health problems and serious health problems of her husband the arthroscopy was delayed until May, 1990. In the meantime she suffered much pain especially in keeping her husband's pharmacy business going as she had to stay on her feet for prolonged periods on a daily basis. By the time of trial in June 1992 she still suffered pain upon standing for extended periods of time. Her orthopedist testified that these problems would not go away in the foreseeable future and that she would be more susceptible to arthritis in the knee than would of a person with a normal knee. Her medical expenses, which the trial court awarded in addition to the general damages, were $12,485.12. We are not persuaded that the award of $60,000 constitutes an abuse of the trial court's discretion.
Accordingly, the judgment is affirmed.
AFFIRMED.