707 So.2d 441 (1997)
Bruce BOSTWICK
v.
M.A.P.P. INDUSTRIES, INC., et al.
No. 97-CA-791.
Court of Appeal of Louisiana, Fifth Circuit.
December 30, 1997.
*442 Bienvenu, Foster, Ryan & O'Bannon, John W. Waters, Jr., John E. McAuliffe, Jr., Ralph G. Breaux, New Orleans, for Appellants/Defendants M.A.P.P. Industries, Inc, Estate of Tom J. Clark and Scottsdale Insurance Company.
The Palazzo Law Firm, Leo J. Palazzo, New Orleans, for Appellee/Plaintiff Bruce Bostwick.
CANNELLA, Judge.
Defendants, M.A.P.P. Industries Inc. (MAPP) and the Estate of Tom Clark, appeal from a judgment rendered in favor of plaintiff, Bruce Bostwick, awarding him damages for the injuries he sustained while on defendants' premises. For the reasons which follow, we affirm.
On December 30, 1994, plaintiff commenced working for MAPP, a Louisiana corporation, *443 owned by Tom Clark. MAPP is a temporary labor service company which supplies labor to other companies as requested. Because plaintiff was without housing and short of funds, he moved into a bunkhouse, owned and operated by MAPP. The rent was $35 per week to reside there and meals were provided at an additional cost of about $13 per day. Only MAPP employees could reside at the bunkhouse. However, employees were not required to live there nor were they required to go on every job that was offered. It was to MAPP's advantage to have a ready work force on hand. But, living at the bunkhouse was optional, for the mutual convenience of both the employee and MAPP.
Plaintiff commenced living at the bunkhouse on December 30, 1994. He worked that day at Hess Oil Refinery and slept at the bunkhouse that night. The following morning plaintiff was awakened at 4:30 a.m. and asked if he wanted to go out on another job. He said that he did and was taken to a work site to load drilling pipe onto a barge. He worked seven hours and returned to the bunkhouse. He ate a meal for which he paid. He was then asked if he wanted to go on another job and he accepted again. He was brought to a refinery and asked to clean out an oil tank. He worked about five hours and returned to the bunkhouse. It was about 11:00 p.m. and plaintiff went to bed. The next day was New Years Day and there was no work available. Plaintiff stayed around the bunkhouse all day watching television. The following day, January 2, 1995, plaintiff was again told that business was slow because of the holidays. He stayed around the bunkhouse most of the day. He had lunch at the bunkhouse, for which he paid. In the afternoon, plaintiff and two friends went to the neighborhood grocery and bought a six-pack of beer to split. They went back to the bunkhouse, went upstairs and watched television. At about 5:30 p.m., plaintiff decided to go downstairs to go to the bathroom and check on dinner. It was at that time, on his way downstairs, that plaintiff fell down the stairs and was injured. He stated that the stair "gave way" and he fell or rolled down the first half-flight of stairs. Then, as he tried to stand up on the landing, his feet became entangled in some clear plastic sheeting material that had blown off of the window and he fell down the second half of the flight of stairs, injuring himself. Plaintiff sustained injuries to his left wrist, which was broken in two places, his neck and back. He went to Charity hospital for medical treatment.
On March 21, 1995, plaintiff filed suit against MAPP and its insurer, ABC. The petition was amended twice, once to name Scottsdale Insurance Company as MAPP insurer and again to add as a defendant the Estate of Tom J. Clark, the owner of the property where plaintiff was injured and the sole shareholder of MAPP. Defendants answered the petition and supplemental petitions and filed a motion for summary judgment on the grounds that plaintiff's exclusive remedy was in Worker's Compensation. La. R.S. 23:1032.
Following a hearing on the motion for summary judgment, the trial court rendered judgment on March 18, 1996 denying it. The trial court stated that there were material issues of fact to be resolved. The case was thereafter tried on January 27 to 30, 1997. On the last day of trial, plaintiff moved for a directed verdict requesting that the trial court rule that plaintiff's tort action was not barred by the exclusivity of Worker's Compensation. After argument, the trial court granted the motion, ruling "as a matter of law that Mr. Bostwick was not in the course and scope of his employment at the time of this injury." The trial was subsequently completed and the case submitted to the jury on interrogatories. The jury found all parties partially at fault for plaintiff's injuries, assigning fault against MAPP for 55%, against the Estate of Tom Clark for 30% and against plaintiff for 15%. The jury also awarded damages as follows:

Past medical expenses $20,000
Future medical expenses $47,000
Past and future lost wages $66,625
Mental anguish and distress
 past and future $ 6,600
Physical pain and suffering
 past and future $32,900
Physical disfigurement and
 permanent disability $85,400

*444 On February 5, 1997, judgment was signed in accord with the jury verdict. It is from this judgment that defendants now appeal. Plaintiff has answered the appeal.
Defendants' primary argument on appeal is that the trial court erred in ruling that plaintiff's tort action was not barred by the exclusivity provisions of the Worker's Compensation Act, particularly La.R.S. 23:1032. Defendant argues that plaintiff was in the course and scope of his employment, within the meaning of the statute, at the time of the accident. He was living in his employer's bunkhouse to be available for jobs on a 24 hour basis. Thus, defendant argues, he was in the course and scope of his employment when injured.
Plaintiff argues to the contrary, that he was not in the course and scope of his employment. He points out that it was not a job requirement that he stay at the bunkhouse. All MAPP employees did not stay there. Also, it was not required that he take every job that was offered. An employee had the option to go out on a specific job or not. Further, the lodging was not donated by the employer. Rather, plaintiff was required to pay for the lodging and any food he consumed while on the premises.
The extent of an employer's liability for paying worker's compensation benefits to an injured employee is controlled by La.R.S. 23:1031(A) which provides:
If an employee not otherwise eliminated from the benefits of this Chapter receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated.
The exclusivity of these provisions is established by La.R.S. 23:1032 with provides in pertinent part:
... [T]he rights and remedies herein granted to an employee or his dependent on account of injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages....
Thus, under these articles and the jurisprudence interpreting them, an employee's exclusive remedy against his employer for an injury arising out of and occurring within the course and scope of his employment is worker's compensation benefits. The Louisiana Supreme Court discussed the requirements of La.R.S. 23:1032 in Guillory v. Interstate Gas Station, 94-1767 (La. 3/30/95), 653 So.2d 1152 stating:
The terms "arising out of" and "in the course of" constitute a dual requirement. The former suggests an inquiry into the character or origin of the risk while the latter brings into focus the time and place relationship between the risk and the employment. The two requirements cannot, however, be considered in isolation from each other. A strong showing by the claimant with reference to the arise-out-of requirement may compensate for a relatively weak showing on the during-course-of requirement, or vice versa. As a corollary it follows that whenever the showing with respect to both requirements is relatively weak a denial of compensation is indicated.
In Mundy v. Dept. Of Health & Human Resources, 593 So.2d 346 (La.1992) the Court had expounded on the meaning of the two requirements stating:
An accident occurs in the course of employment when the employee sustains an injury while actively engaged in the performance of his duties during working hours, either on the employer's premises or at other places where employment activities take the employee. Kern v. Southport Mill, 174 La. 432, 141 So. 19 (1932); W. Malone & H. Johnson, 13 Louisiana Civil Law TreatiseWorker's Compensation § 161 (2d ed. 1980).... [T]he principal criteria for determining course of employment are time, place and employment activity.
The determination of whether an accident arises out of employment focuses on the character or source of the risk which gives rise to the injury and on the relationship of the risk to the nature of the employment. An accident arises out of employment if the risk from which the injury *445 resulted was greater for the employee that for a person not engaged in the employment. Myers v. Louisiana Railway and Navigation Co., 140 La. 937, 74 So. 256 (1917).
When the employer seeks to avail himself of tort immunity under La.R.S. 23:1032, the employer has the burden of proving entitlement to immunity. In the present case, we find that the employer did not meet its burden.
The nature of MAPP's business was to provide temporary labor to other companies. Plaintiff was one of it's laborers. At the time of the accident which gave rise to plaintiff's injuries, he had not been employed for two days. While he was not working, he was not being paid anything by his employer. Plaintiff was residing at a bunkhouse which was owned and operated by his employer. Only MAPP employees could reside at the bunkhouse. However, it was not a condition of his employment that he reside at the bunkhouse. He was free to reside anywhere and still receive calls for work. Also, he was not on 24 hour call for his employer. The residents of the bunkhouse were not required to go out on all jobs that were offered and could decline offered employment opportunities, if so inclined. Further, the bunkhouse residence and food was not provided by the employer as payment for employment. To the contrary, plaintiff paid $35 per week for his bed and privileges and about $13 per day for his food if he consumed three meals.
Therefore, upon reviewing the record, we do not find any evidence that the injury arose out of the employment. The only factor linking the risk to the employment was that plaintiff had to be a MAPP employee to reside at the bunkhouse. Beyond that, there was no connection. Because the "arising out of" showing is non-existent or weak at best, a strong showing of "course of employment" is essential to MAPP's successful claim for tort immunity. Based on this record, there is no showing that plaintiff was in the course and scope of his employment at the time of the injury. Accordingly, we find no error in the trial court ruling that MAPP failed to meet its burden of proving entitlement to tort immunity.
Defendants next argue that the jury erred in finding them strictly liable and negligent in causing plaintiff's injuries. Defendants cite the law in strict liability cases and argue that plaintiff bears the burden of proving: (1) the thing that caused the damage was in the custody of the defendant; (2) the thing contained a "defect" (i.e., it had a condition that created an unreasonable risk of harm to plaintiff, and: (3) the "defective condition" caused plaintiff's injuries.) Oster v. Dept. Of Transportation & Development, 582 So.2d 1285 (La.1991). Defendants also contend that proof of a negligence action entails all the elements of a strict liability action with the additional requirement that plaintiff prove that a defendant had actual or constructive knowledge of the risk of harm presented by the condition of the thing and failed to take steps to remedy the condition or warn persons of its existence.
As pointed out by plaintiff, defendants make no argument concerning care, custody or control of the building and particularly the stairwell. Rather, the focus of defendants' argument is that there was insufficient proof of a defect in the premises and/or insufficient evidence that defendants had knowledge of the defect.
It is well settled that, on appellate review of a factual determination, the reviewing court may not set aside the factfinder's findings of fact in the absence of manifest error or unless they are clearly wrong. Also, where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, 283 So.2d 716 (La.1973). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State through DOTD, 617 So.2d 880 (La. 1993). Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous *446 or clearly wrong. Stobart, supra. When findings are based on determinations regarding the credibility of witnesses, the manifest error clearly wrong standard demands great deference to the trier of fact's findings, because only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Canter, supra at 724; Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825, 826 (La. 1987); Boulos v. Morrison, 503 So.2d 1, 3 (La.1987); Williams v. Keystone General Contractors, Inc., 488 So.2d 999, 1001 (La. 1986); Johnson v. Insurance Co. of North America, 454 So.2d 1113, 1117 (La.1984); Berry v. Livingston Roofing Co., 403 So.2d 1247, 1249 (La.1981); Crump v. Hartford Accident & Indemnity Co., 367 So.2d 300, 301 (La.1979).
Here, plaintiff testified that as he stepped on the first stair it "gave way" beneath him causing his fall down the first half-flight of stairs. He testified that he tried to catch himself, but that there was no handrail to grab. It was about 5:30 P.M. and there was no light in the stairwell. When plaintiff tried to regain his balance and stand on the landing, he was dizzy and his feet got tangled in clear plastic sheeting that had blown off the window, causing him to fall down the second half-flight of stairs. Robert Anderson, a civil engineer, testified as an expert for plaintiff. He stated that the stairs were in extremely poor condition. They differed significantly in height variation, violating local code ordinances. The lighting was poor and there was no handrail. He acknowledged that they were some of the worst stairs that he had inspected. The defense produced no expert regarding the condition of the stairs.
The defense focused their arguments on plaintiff's familiarity with the condition of the stairs, since he had been at the bunkhouse for four days. They also argued that they lacked knowledge of any problems regarding the stairs.
However, in view of plaintiff's testimony that the stairs broke under his foot, his knowledge of the condition of the stairs was irrelevant. Also, the defense argument concerning the lack of knowledge of the defective condition of the stairs was contradicted by the testimony of Abram Jackson, a former resident at the bunkhouse, who testified that the men had complained several times about the condition of the stairs, the lack of lighting and the fact that others had fallen.
Further, we find that the record amply supports a finding that plaintiff's injuries did not result solely from the fall down the second half-flight of stairs. Rather, the record proves that plaintiff's fall, which resulted in his injuries, commenced at the top of the stairs and then, due to that fall, plaintiff was disoriented, dizzy and weakened when his feet became entangled in the clear plastic which resulted in a continuation of his fall down the second part of the stairs. The events and injuries directly resulting from the initial tortious conduct are attributable to that conduct.
Based on our review of the record before us, we find no manifest error in the jury determination that defendants were strictly liable for and negligent in causing plaintiff's injuries.
Finally, defendants argue that the jury erred in assigning plaintiff 15% of the fault for the accident. Defendants contend that because plaintiff had lived at the bunkhouse for four days, he was familiar with the condition of the stairs and, therefore, should have been more attentive in going down them on the occasion of his fall.
Plaintiff, in answering the appeal argues to the contrary, that the jury erred in assigning plaintiff any percentage of fault in the cause of the accident. Plaintiff argues that regardless of plaintiff's familiarity with the poor condition of the stairs, the testimony indicates that the stairs broke when plaintiff stepped on them. Further, plaintiff points out that he did approach the stairs cautiously. He did not attempt to run down the stairs. But, in the unlighted area, when he stepped on the first stair, it buckled under his weight. He then attempted to grab something and stop his fall, but there was no hand rail.
In considering the question of allocation of fault among the parties, this court recently in Kelly v. Boh Bros. Const. Co., Inc., 96-1051 *447 (La.App. 5th Cir. 4/9/97), 694 So.2d 463 followed the guidelines set out in Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985), quoting from Section 2(b) of the Uniform Comparative Fault Act and the Comments thereto, as follows:
In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.
The court in Watson elaborated further stating:
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.
Watson, supra, at 974.
The jury determined that plaintiff was 15% at fault in causing his own injuries. Plaintiff had resided at the bunkhouse for four days and was familiar with the poor condition of the stairs and the inadequate lighting. Weighing against that, however, is the evidence that the stairs were maintained in this inadequate condition despite complaint and prior accidents. As testified to by plaintiff's expert, the stairs were in violation of local ordinances because of height variations, absence of a handrail and inadequate or nonexistent lighting. Thus, in applying the Watson factors to this case, we cannot say that the jury finding was manifestly erroneous in its allocation of fault.
Plaintiff answered the appeal and argues that the damage award was excessively low in several respects. Plaintiff argues:
(1) the jury awarded below the minimum award for cervical injuries requiring surgery in the 5th Circuit; (2) the jury failed to award damages for the injury to the Plaintiff's wrist and hand; (3) the jury failed to award damages for the injuries to Plaintiff's lumbar region; (4) the jury awarded insufficient damages for past, present and future emotional distress; and (5) the jury's determination of lost past and future wages was manifestly erroneous.
In assessing damages, the jury awarded a total of $124,900 in general damages and $66,625 in past and future lost wages. The standard for the reviewing court to follow to determine whether an award of damages is inadequate was stated by the Louisiana Supreme Court in Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993):
... "[i]t is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review be considered either excessive or insufficient," Reck v. Stevens, 373 So.2d 498, 501 (La. 1979).... In order to make this determination, the reviewing court looks first to the individual circumstances of the injured plaintiff. Only after analysis of the facts and circumstances peculiar to the particular case and plaintiff may an appellate court conclude that the award is inadequate. See Reck v. Stevens, supra; Cariere v. State Farm Insurance Co., 467 So.2d 867 (La.App. 2d Cir.1985).
The discretion vested in the trier of fact is great. Thus, an appellate court should rarely disturb an award of general damages. In Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993) the Louisiana Supreme Court spoke as to the proper role of an appellate court in reviewing an award of general damages, as follows:
... [T]he role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy or inadequacy of the award should be determined by the facts and circumstances particular to the case under consideration.

*448 ... The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. (Citations omitted.) Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. (Citations omitted.)
... [T]he discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable person frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Youn, supra at 1260-1261.
The testimony reveals that plaintiff slipped and fell on the stairs, severely injuring his wrist. He has had two surgeries on his wrist and may have a third. He suffers a 30% residual disability from the wrist injury. Plaintiff also presented evidence through medical testimony that he injured his neck and lumbar area. There was testimony that plaintiff is in constant pain and that he is in need of surgery to fuse two or three vertebrae in the cervical area. There was testimony that he is permanently disabled and severely depressed from the injuries. The economist estimated his lost wages, if unable to return to work, for a remaining 12 year work life expectancy, assuming plaintiff earned $13,000 per year, at between $133,700 to $254,000.
However, while there was no conflicting evidence as to the wrist injury, there was conflicting evidence presented by defendants as to the spine injuries. The defense medical witness testified that plaintiff's back and neck pain and problems were not related to the fall. Rather, they were typical degenerative problems due to age. He also testified that plaintiff's responses upon examination indicated emotional responses rather than actual physical disfunction. The economist admitted on cross examination that his figures were based on full time work for each year and total disability. Plaintiff however did not average full time work each year for the five preceding years. Further, the uncontradicted evidence only supported a finding of 30% disability due to the wrist injury. The evidence for total disability was contradicted.
The cases cited by plaintiff concerning similar wrist injuries evidenced damage awards in the $75,000 range. The jury herein awarded plaintiff $124,900 total in general damages. We are not provided with any information as to the intent of the jury regarding whether the award was for the wrist, neck or back. However, given the particular facts of this case and the record as a whole, plaintiff has not established that the award is lower than that which a reasonable trier of fact could assess.
Being ever mindful of the deference we owe to the trier of fact in its award of damages, we find that the jury's awards, while at the low end of the spectrum, were not so low as to be an abuse of its great discretion.
Accordingly, for the reasons set forth above we find no error in the trial court ruling, that plaintiff's remedy was not confined to worker's compensation and the jury verdict that defendants were liable to plaintiff for his injuries in the amounts set forth, and affirm the trial court judgment. Costs of appeal are assessed against defendants.
AFFIRMED.