1,CANNELLA, Judge.
Plaintiffs, Corina and Lenias Marie, appeal from a judgment arising from an automobile accident case filed against defendants, Carla Toledo, her insurer, Allstate Insurance Company, and plaintiffs’ uninsured/underinsured (UM) insurance provider, State Farm Mutual Automobile Association. We affirm.
Corina Marie was leaving work at Ochs-ner Clinic on February 1, 1995 when her car was rear-ended by another vehicle driven by Yvette Fouchi. The Fouchi car had also been rear-ended. The car that struck the Fouchi vehicle was driven by defendant, Carla Toledo. The accident happened when Corina Marie was stopped for a traffic light, waiting to enter Jefferson Highway in Jefferson, Louisiana. She was hit twice, with the Fouchi vehicle ending up under Corina Marie’s back bumper and damaging plaintiffs gas tank.
As a result of the accident, on January 16, 1996, plaintiffs filed suit against defendants for injuries to Corina Marie’s, neck and back and for loss of ^consortium of her husband, Lenias Marie. A judge trial was held on October 9, 1998. Prior to trial, the parties stipulated that the claim was less than the limits of the two insured policies and that plaintiffs would not seek a judgment against Toledo.[1] After the trial, *971 judgment was rendered in favor of plaintiffs in the total amount of $7,352.03, $6,000.00 for Corina Marie’s, pain and suffering, $352.03 for her special damages and $1,000.00 for Lenias Marie’s loss of consortium.
On appeal, plaintiffs assert that the award of damages is inadequate. Plaintiffs contend that the trial judge was manifestly erroneous in finding that Corina Marie suffered only a 6 month whiplash injury and that her back condition predated the accident.[2]
Plaintiff testified that the day following the accident, her back from her neck to her tailbone began hurting. She stated that she treated the pain with heat, but it became so bad that she had to use her hand to lift her head. Plaintiff claimed that both her back and neck hurt at this time. Although she had 2 prior minor accidents over her 28 years before this one, plaintiff said that she had never felt this type of pain in the past. Plaintiff admitted that she had problems a few years before from an injection in the buttocks that caused pain down her leg. She stated that she went to physical therapy to stretch that scarring. The medical records show that in January of 1995, shortly before the accident, she was treated for “low back pain.” However, plaintiff disagreed that she had these pains on and off for many years. She claimed that this was a hip problem that was related to the buttocks incident, not to a low back condition.
From May 29, 1995 through August 15, 1995, plaintiff stated that she did|4not seek any treatment. She took over-the-counter medications for the next 8 months because the prescription muscle relaxants caused her drowsiness. She went to physical therapy for the first 2 months, then stopped for 4 months.
Prior to the accident, plaintiff also suffered from frequent migraine headaches and temporal mandibular joint (TMJ) syndrome, which she claimed got worse after the accident because the pain caused her to clench her teeth. However, plaintiff admitted that her job as supervisor over Control Visit was stressful and that, after the accident, her job had become more stressful because she had fewer employees. Plaintiff testified that she missed 1 day of work as a result of the pain.
More than 3 years later, in January of 1998, plaintiff began to complain of right shoulder pain that she related to the accident. At the time of trial, plaintiff testified that her neck and back pain had improved, but that she still has low back pain and a “sticking” feeling in her neck.
Plaintiff was seen initially by her primary doctor, Dr. Leslie Blake, an internal medicine doctor. A week later she was referred to an orthopedic surgeon, Dr. Paul Parks. She subsequently was treated by several other doctors at the Ochsner Clinic.[3]
Dr. Blake examined plaintiff 2 days after the accident. She found spasms in plaintiffs neck and back, particularly in the left side of the neck. X-rays indicated degenerative changes in the neck and back. Dr. Blake diagnosed plaintiff with whiplash, which she related to the accident. After a telephone conference with plaintiff on February 6, 1995, in which plaintiff complained of constant pain, Dr. Blake referred her to Dr. Parks for an orthopedic examination. 15In May of 1995, plaintiff returned to Dr. Blake with complaints of a possible bladder infection, chronic headaches, fatigue, numbness in her feet and low back pain. The low back pain was not the most important complaint at that time. In July, by telephone, the doctor recommended that plaintiff obtain a Tens Unit to alleviate her continued complaints of back pain.
Dr. Blake testified that plaintiff told her in 1993 that she suffered from TMJ prob *972 lems, neck pain and teeth grinding. Plaintiff was diagnosed with myofacial pain syndrome, which is chronic pain of muscular origin. In 1994, she told the doctor that she had daily tension headaches, which could be caused by situational stress, neck pain, high blood pressure, sinus problems, depression or any of numerous other causes. In January of 1995, plaintiff had an ear infection and complained of foot problems. In May of 1995 she did not complain of neck pain, but reported back pain. The doctor did not see plaintiff in 1996 and treated her in 1997 for unrelated complaints.
Dr. Blake’s notes showed that plaintiff had a history of back pain and that she had an Magnetic Resonance Imaging (MRI) test in 1992. However, she noted that plaintiff had seen a neurosurgeon at that time for buttock pain and numbness and that there was some concern about the sciatica nerve as a result of an injection. She testified further that plaintiffs foot problems could cause back pain.
Dr. Parks testified that he saw plaintiff on February 21, 1995. During his examination, plaintiff exhibited pain along the spine by the right side of the neck and back. She had decreased cervical motion. X-rays showed degenerative changes with osteophyte formations at the C-2, C-3 and C-4 levels, but were relatively normal. He testified that her back was essentially normal. An MRI |fiwas taken on March 21, 1995, which was also normal. Dr. Parks diagnosed plaintiff with acute sprain/strain syndrome of the neck and back. He testified that normal recovery for a neck sprain is 8-12 weeks.
Dr. Joseph Kaufman, an expert in the field of physical medicine and rehabilitation, testified that plaintiff was referred to him by Dr. Blake. Dr. Kaufman -saw plaintiff on November 1, 1995, complaining of a dull aching back pain when standing or sitting for long periods. She had no neck pain at that time.
Dr. Kaufman treated plaintiff with a program of exercises designed to teach her to stretch at home. The program lasted 4 weeks. In January of 1996, plaintiff had increasing back pain, but found some relief with a liimbar corset. She had some functional improvement on February 8, 1996. She had a bad day on February 13, 1996 and the doctor changed her exercises. In March, plaintiff complained of increasing headaches. Dr. Parks discussed her sleep patterns and the possibility of trigger point injections to break up the soft tissue. This continued until June of 1996, when she complained of constant variable pain,right upper extremity discomfort, low back pain and neck pain. She told him that she thought the pain was stress related. He recommended occupational therapy, Tens treatment for the right upper extremity pain, ultrasound and strengthening exercises.
Dr. Kaufman testified that plaintiffs headaches were likely due to stress or from muscular-skeletal tightness. He stated that her X-rays showed degenerative changes that were not grossly abnormal'. He diagnosed plaintiff with muscular sprain/strain of the back with some soft tissue discomfort. He felt it was probably related to the accident. He stated that a true sprain or strain would have improved within 8 weeks. That was why he called it a soft tissue injury. He |7noted that before the March 19 th visit, plaintiff had wisdom tooth surgery, which could account for her neck pain. He further stated that her long history of TMJ syndrome could cause myofacial pain. However, he related some of her symptoms from the accident as exacerbation of low back pain, paracer-vical headaches and the right shoulder pain. Even if she had prior back problems, he felt that the accident worsened it. He noted it was not uncommon for back pain to wax and wane.
Dr. Richard Strub, a neurologist, testified that he treated plaintiff in 1994 for chronic, almost daily, headaches. She was unable to get a referral again until November of 1996, when she mentioned the acci *973 dent in 1995. She still had headaches almost daily, which she attributed to stress and her sleep patterns. He found no difference between her condition in 1994 and 1996. Dr. Strub said that the headaches were unrelated to the accident.
Dr. Robert Quinet, a rheumatologist and internal medicine doctor, testified that plaintiff was referred by Dr. Blake. He saw her 3 years after the accident, once in March and once in April of 1998. She complained also of right side shoulder and upper arm pain and numbness in the fingers. Her neurological exam was normal, but she exhibited tenderness on the right side of the neck and shoulder blade. Dr. Quinet diagnosed cervical myofacial pain on the right side. He stated that she exhibited a surprisingly normal neurologic exam for the symptoms which she described. He prescribed Lodine, physical therapy, a muscle relaxant, a different anti-inflammatory medication and ordered ultra-sound and massage. Although plaintiffs condition did not change, Dr. Quinet said that even minor injuries can continue to cause pain and that it is real. He stated that no one understands why or what triggers muscle pain syndrome. He |stestified that plaintiff will probably continue to have it since the pain did not resolve within 3 years. However, he noted that her main complaint was her neck and shoulder, although she mentioned having intermittent burning pain in her back since the accident.
 The standard for the review of damage awards is whether, after an articulated analysis of the facts, the court finds the trial judge abused his/her great discretion. Bostwick v. M.A.P.P. Industries, Inc., 97-791 (La.App. 5th Cir. 12/30/97), 707 So.2d 441, 448; Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993). This determination is made with consideration to the individual circumstances of the injured plaintiff. Bostwick v. M.A.P.P. Industries, Inc., 707 So.2d at 448; Theriot v. Allstate Ins. Co., 625 So.2d at 1340. After an analysis of the facts and circumstances peculiar to the particular case and plaintiff, an appellate court may conclude that the award is inadequate. Bostwick v. M.A.P.P. Industries, Inc., 707 So.2d at 448; Theriot v. Allstate Ins. Co., 625 So.2d at 1340. Only then is a resort to prior awards appropriate, and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Bostwick v. M.A.P.P. Industries, Inc., 707 So.2d at 448; Theriot v. Allstate Ins. Co., 625 So.2d at 1340.
In this case, we find that the trial judge did not abuse her discretion. The evidence shows that Corina Marie’s headaches did not change in frequency nor intensity after the accident. Furthermore, although she contended that her prior back complaints related to an injection, most of the medical testimony indicated that she had recurrent low back problems before the accident. For 4 months, from July until November of 1995, she did not seek any medical treatment for either her neck or back. In November of 1995, her back pain resumed, but her | flneck was not hurting. She was then treated for 7 months for her back complaints. Under these facts, the evidence does not support an aggravation of her back or neck of a duration of more than 6 months. Thus, we find that the trial judge did not err in finding that Corina Marie sustained a 6 month whiplash injury to her neck and back. Furthermore, although the award is low, we find that it is not so low as to be an abuse of discretion.
Plaintiff, Lenias Marie, argues that the loss of consortium award is inadequate. He testified that plaintiffs condition has caused a reduction in their sexual relations and a decrease in their other shared activities. Lenias Marie stated further that the pain interferes with his wife’s ability to garden and do housework. Based on our prior findings, we conclude the trial judge did not abuse her discretion in,the award for loss of consortium.
*974 Accordingly, the judgment of the trial court is hereby affirmed.
Each party is to bear his/her/its own costs.
AFFIRMED.

. The policy limits were $10,000 on the Allstate policy and $25,000 on the State Farm UM policy.

. We refer to Corina Marie as plaintiff in connection with the medical evidence.

. All of the physicians testified by deposition.