750 So.2d 1163 (2000)
Gwendolyn SLY
v.
Patricia MORRIS, Allstate Insurance Company and Progressive Insurance Company.
No. 99-CA-884.
Court of Appeal of Louisiana, Fifth Circuit.
January 25, 2000.
P.M. Donovan, Metairie, Louisiana, Attorney for Appellees Patricia Morris and Allstate Insurance Company.
Russell A. Solomon, Pamela M. Wiza, New Orleans, Louisiana, Attorney for Appellant Gwendolyn Sly.
Panel composed of Judges CHARLES GRISBAUM, Jr., JAMES L. CANNELLA and CLARENCE E. McMANUS.
JAMES L. CANNELLA, Judge.
Plaintiff, Gwendolyn Sly, appeals from a judgment in an automobile accident case against defendants, Patricia Morris (Morris) and her insurer, Allstate Insurance Company. We amend and affirm as amended.
On April 23, 1996, plaintiff was traveling west on Interstate 10 in the left lane. Because of approaching traffic from the rear, she changed to the middle lane. Morris was traveling in the middle lane behind plaintiff. Morris tried to maneuver from the middle to the right lane and back again. At that point, Morris' vehicle struck the left rear panel of plaintiff's car.
On April 22, 1997, plaintiff filed suit against defendants for injuries to her neck and back.[1] Trial was held on March 29, 1999. On April 8, 1999, the trial judge rendered a judgment in favor of plaintiff and awarded her medical expenses (stipulated) *1164 of $4,123 and $2,800 in general damages. On appeal, plaintiff contends that the trial judge erred in awarding inadequate general damages.
Shortly following the accident, plaintiff sought treatment from a doctor whom she did not like and saw only one time. She then went to a chiropractic clinic and was seen by Dr. Charles Bardwell on May 16, 1996. Her complaints were of neck and back pain. Plaintiff was diagnosed with cervical thoracic sprain/strain and lumbar sprain/strain. Following her initial visit, she was treated by Dr. Bardwell's associate, Dr. Barrett Richter. X-rays were taken and she received heat treatments, electrical stimulation, massage, home exercises and intersegmental traction from May until September 19, 1996. In June of 1996, the doctor sent a letter to her attorney stating that she did not require any further treatment, but he nevertheless continued to treat her until September of 1996. Also in June of 1996, plaintiff complained of low back pain, as well as mid-back and neck pain. Because her symptoms continued in September of 1996, Dr. Richter referred plaintiff to an orthopedic surgeon, Dr. Andrew Kucharchuk, who saw her on two occasions. After the first examination on October 17, 1996, Dr. Kucharchuk diagnosed plaintiff with cervical and lumbar strain. He ordered and subsequently reviewed Magnetic Resonance Imaging (MRI) tests of her back and neck. Dr. Kucharchuk found a very small, but recent, herniation in the C5-C6 disc and an annular tear. He also found pre-existing degenerative changes which he felt were contributing to her discomfort. However, both he and Dr. Richter found that her cervical disc herniation and her cervical and back strain were related to the automobile accident. Dr. Kucharchuk treated plaintiff with an analgesic and muscle relaxer. Dr. Kucharchuk saw plaintiff again in January of 1997. At that time, he concluded that plaintiff had reached maximum medical improvement and was discharged.
Plaintiff testified that she struck her head on the back of the seat when the impact occurred, causing her head, shoulders and eyes to hurt immediately. This was not reflected on the police report, although she testified that she informed the investigating officer.[2] Plaintiff testified that she continues to have discomfort in her neck when she moves her neck downward and that it feels stiff when she turns to the left and right.
Dr. Daniel Scullin reviewed the MRI test results.[3] He submitted a letter-report to defendant, attributing plaintiff's pain to degenerative disc disease. However, he also noted that the MRI shows a small bulge at C5-6. In addition, Dr. David Aiken, an orthopedic surgeon, saw plaintiff on one occasion in 1998. He did not review the MRI tests, but concluded from his examination that plaintiff had no abnormalities.
The standard for the review of damage awards is whether, after an articulated analysis of the facts, the court finds the trial judge abused his/her great discretion. Bostwick v. M.A.P.P. Industries, Inc., 97-791 (La.App. 5th Cir. 12/30/97), 707 So.2d 441, 448; Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993). This determination is made with consideration to the individual circumstances of the injured plaintiff. Bostwick v. M.A.P.P. Industries, Inc., 707 So.2d at 448; Theriot v. Allstate Ins. Co., 625 So.2d at 1340. After an analysis of the facts and circumstances peculiar to the particular case and plaintiff, an appellate court may conclude that the award is inadequate. Bostwick v. M.A.P.P. Industries, Inc., 707 So.2d at 448; Theriot v. Allstate Ins. Co., 625 So.2d at 1340. Only then is a resort to prior awards appropriate, and then for the purpose of determining the highest or lowest *1165 point which is reasonably within that discretion. Bostwick v. M.A.P.P. Industries, Inc., 707 So.2d at 448; Theriot v. Allstate Ins. Co., 625 So.2d at 1340.
After our review, we find that the general damage award of $2,800 is so low as to constitute an abuse of discretion. Plaintiff at least suffered an eight month cervical and lumbar sprain, with a small herniation of the C5-6 disc, although there is no evidence of impingement on a nerve. However, she still has some residual discomfort in the neck. Consequently, we find that the lowest amount that the trial judge should reasonably have awarded is $10,000.
Accordingly, the judgment of the trial court is hereby amended to increase the general damage award to $10,000. The judgment is otherwise affirmed.
Defendants are to pay the costs of appeal.
AMENDED AND AFFIRMED AS AMENDED.
NOTES
[1] She also named her uninsured/underinsured motorist carrier, Progressive Speciality Insurance Company, but dismissed it from the action in November of 1997.
[2] The officer was not called to testify because the parties stipulated that the police report would be introduced into evidence in lieu of the officer's testimony.
[3] Dr. Scullin is apparently a radiologist, however no specialty was indicated in the evidence.