| .MARION F. EDWARDS, Judge.
Plaintiff/appellant Christopher M. Her-zog was injured when a vehicle driven by *998 Marie Fabaeher crossed in front of his motorcycle, causing him to strike her auto and resulting in injuries to his neck, wrist, shoulder, and knee. Herzog appeals the general damage award in his favor as inadequate and an abuse of discretion. After careful review of the record, we find that the jury verdict was an abuse of discretion and increase the general damage award to $62,500.00.
Herzog filed suit in the Twenty-Fourth Judicial District Court against Fabacher, Allstate Insurance Company as Fabacher’s liability insurer with policy limits of $100,000.00, and State Farm Mutual Automobile Insurance Company as his uninsured/underinsured carrier. At trial, Fa-bacher’s fault was stipulated. Following the jury trial, a verdict was rendered in favor of Herzog and against Allstate in the total amount of $58,920.00. In this verdict, the jury granted $20,000.00 for past, present and future pain and suffering; $15,000.00 for past, ^present and future emotional distress; $12,000.00 for past medical expenses; $11,448.00 for past lost wages; $250.00 for loss of services; and $222.00 for motorcycle storage. Judgment on the verdict was granted on December 18, 2000.
On the morning of the accident, Herzog testified that he was driving his motorcycle on David Drive in Metairie when Ms. Fa-bacher’s auto suddenly crossed in front of him. Due to this sudden and unexpected action, Herzog was unable to prevent his motorcycle from colliding with the Fabacher vehicle. The impact caused Herzog to crash through the windshield of his motorcycle, fly feet over head through the air onto the hood of the car and strike Fa-bacher’s windshield, eventually falling to the street. He was terrified and in extreme pain, and he could feel a lump in his shoulder. He took some aspirin, but this aspirin did not alleviate the pain.
Emergency workers arrived 10-15 minutes later and transported him to the hospital. In order to take x-rays at the emergency room, his shoulder had to be moved in different positions and this was very painful. After he left the emergency room he was advised to, and did, go directly to an orthopedic surgeon, Dr. Marshall Book, because the bone in his wrist was broken almost in half. Dr. Book put a splint on his shoulder, which went around both arms and tied in the back, causing him much pain. Although he could move his arms, it was very uncomfortable. He had to sleep in the splint, and had to sleep on the floor for two weeks. He also received a wrist brace. Dr. Book restricted Herzog’s activities, and his entire body was sore for a time.
Herzog testified that he was 33 years old at the time of trial and had been a deck man and wheel man on a tugboat for six years. He also had an OUTV [^operator uninspected towing vessel) license. He worked on a harbor tug, assisting the ship in docking and undocking. Prior to the accident, he felt fine and was physically active, playing softball and volleyball. He had no previous problems with his left shoulder, wrist, or neck. He had surgery on his right knee at the age of 22 and after that, he was in a skiing accident which caused some knee swelling for a short time. He also had a later, work related accident involving his knee, for which he had to take medication for a couple of days, but no problems of a continuing nature.
Herzog did not know if he struck his right knee in the accident, and had no complaints of knee pain in the emergency room. However, within a couple of weeks of the accident, he began to feel pain in his right knee. He later went on an auto trip which took eight hours, and this aggravated his knee. Knee surgery was performed *999 on December 21, 1999. Herzog had to take pain medication and could not put weight on his knee for a couple of days, and when he did so it was awkward and painful. His handyman work around the house was limited, since he couldn’t kneel, but the wrist and shoulder were not a problem. His knee is sore in cold weather and pops and clicks. He has avoided playing baseball or volleyball. Formerly, he was involved in racing model boats which required him to kneel in order to work on and start the boats. He was obliged to construct a low table so that he could avoid kneeling.
Herzog returned to work on the tugboat on November 2,1999. His work included chipping painting and cleaning, and he was able to perform those duties, although he sometimes had to do so sitting down. Herzog’s goal is to become a river boat pilot. He testified that is common practice to carry provisions at work such as five gallon buckets of oil, and because it is painful to do so on his left |Rshoulder, he carries them on his right. Cold weather affects the joints which were broken such as his wrist; otherwise he has no problems with his wrist. Since the knee surgery he has been able to return to work in his full capacity, 75% of the time as a deck hand and 25% of the time as a relief captain. After his knee injury in 1987, he had arthroscopic surgery. After injuring his knee in the waterskiing incident, he did not need surgery. He is currently not taking pain medication. About four weeks after the accident, he stopped taking prescription medication for pain and took over the counter products. Other than changes in weather, his fractures have healed well.
Dr. Book, Herzog’s treating orthopedic surgeon, testified that Herzog twisted his right knee in 1987, and probably had a torn medial meniscus. Arthroscopic surgery was performed in which the torn meniscus was excised. Herzog did well until the July 1988 skiing accident. At that time Dr. Book diagnosed an internal derangement of the right knee, and recommended medication. Herzog had no further problems with the knee. On August 18, 1999, the day of the subject accident, Herzog’s major complaint was the injury to his left clavicle, left scapula, and neck pain. The fracture in the left clavicle was displaced and Dr. Book manipulated the shoulder to reduce some displacement, then immobilized it in a clavicle brace. Dr. Book placed Herzog’s left wrist in a navicular fracture brace. For the neck injury Herzog was given muscle relaxers and pain medication.
By September 14, 1999, Herzog’s pain had decreased to the point where he took only Advil; at that time he did not complain of knee pain. On October 12, 1999, Herzog’s shoulder pain was intermittent. Herzog wore the clavicle brace for six to eight weeks.
|fiDr. Book opined that Herzog’s shoulder healed with displacement, and that he suffers from a shortening of his clavicle, which results in a reduction of anatomical power. This dysfunction may cause symptoms from time to time. Relative to his wrist, on October 12, 1999, Dr. Book told Herzog that he could remove the brace at home but to wear it if he were going to engage in a stressful activity. Dr. Book assigned a 5% impairment rating to the left shoulder and a 5% impairment rating to the left wrist. He did not give Herzog any functional restrictions with regard to the use of his wrist and shoulder.
Herzog did not complain of his knee until his second office visit after the accident, on August 25, 1999. At that time he complained of general soreness, stiffness and pain in his right knee and neck. The next notation in the doctor’s records regarding the knee was on either October 21 *1000 oí* 29, 1999 (the record is somewhat unclear), after Herzog had taken an auto trip. Herzog complained of pain and popping with occasional swelling of the knee, but had not related a specific twisting or impact related to the accident. Dr. Book’s impression was that the pain was most likely due to chondromalacia, or soft cartilage, and he recommended that Herzog restrict his activities and take ibuprofen. He was released to return to work.
Herzog returned to Dr. Book with continuing knee problems. At that time, Dr. Book recommended an MRI, which test indicated a non-displaced tear of the medial meniscus. Dr. Book performed arthroscopic surgery of the knee on December 21, 1999. During surgery, a complete meniscectomy was performed. There was also change or damage on both sides of the bone surface which had to be repaired and a synovial plica was excised. Dr. Book believed that the bone damage was due to trauma sustained in the accident. He further stated that the ^progressive changes in the knee were a direct result of the accident and opined that absent the accident, he probably would not have had to perform surgery to repair the meniscus. Plicas are associated with trauma and resulted from soft tissue injury in an accident. Removal of the meniscus creates a minimal amount of instability which increases stress on the surface of the joint. Herzog is likely to have acceleration of the aging, or arthritic process in the repaired knee. Dr. Book assigned a 10% partial permanent physical function to the right knee, and imposed “common sense” restrictions. For example, Herzog should avoid softball and volleyball.
Dr. Book stated on cross examination that one cannot date an injury through an MRI. From the second week after the accident, Dr. Book had no documentation of Herzog’s problems with his neck. Her-zog’s need for future treatment cannot be anticipated.
At trial the parties stipulated that Her-zog’s lost wages from the date of the accident to November 2 were $7,458.06, and from December 21, 1999 (the date of knee surgery) to February, 2000, $3,990. Medical expenses were stipulated in the amount of $11,817.81.
On appeal, Herzog contends the jury abused its discretion in awarding only $35,000.00 in general damages, averring that the jury failed to give full consideration to the particular facts and circumstances as applied to him.
The standard for the review of damage awards is whether, after an articulated analysis of the facts, the court finds the trial judge abused his/her great discretion. This determination is made with consideration to the individual circumstances of the injured plaintiff. After an analysis of the facts and circumstances peculiar to the particular case and plaintiff, an appellate court may | ^conclude that the award is inadequate. Only then is a resort to prior awards appropriate, and then for the purpose of determining the highest or lowest point which is reasonably within that discretion.[1]
In the present case, Herzog testified to suffering extreme pain immediately after the accident, along with his conscious fear that he would be killed or seriously injured. All efforts to diagnose and treat his wrist and clavicle exacerbated his pain. In addition to the necessity of having to wear a shoulder brace for eight *1001 weeks and a navicular brace for at least six weeks, Herzog had to undergo arthroscopic surgery to repair his knee. The surgery required general anesthetic and a recovery period of over one month. There was no evidence to contradict Dr. Book’s opinion that Herzog’s injuries were a result of the auto accident. Although Herzog had injured his knee years earlier, it had been asymptomatic prior to the accident. It is a settled rule of law that a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. When the tortfeasor’s conduct aggravates a pre-ex-isting condition, the tortfeasor must compensate the victim for the full extent of the aggravation.[2]
Although Herzog is presently able to perform most of his job related activities, he must do so with cautionary attention to his injured shoulder and must endure, at an early age, arthritic pain and discomfort. Any strenuous activity requires a wrist brace. Importantly, Herzog has been given an | ^anatomical disability rating of 10% on his knee, and 5% on both his shoulder and wrist. Considering the very physical nature of his profession, the seemingly slight disability ratings impact substantially on both his work and personal life, which, given his young age, may be expected to continue for a number of years. In addition, he must now avoid such pleasurable former leisure activities such as baseball and volleyball in order to preserve himself for his employment.
Considering the impact of the accident and injuries on Herzog, we find the jury’s award of $35,000 in general damages was unreasonably low and an abuse of discretion. Our review of the jurisprudence has not disclosed cases with a similar cluster of comparable injuries as the ones before us. Surveying awards for the injuries individually, we find cases with similar leg injuries with awards between $35,000 $60,000, for knee injuries requiring surgery.[3] At least two cases have awarded $15,000 in damages for broken clavicles.[4] Relative to the wrist injury, comparable cases disclose damage awards ranging from $8,000.00 to $11,000.00.[5] Considering all the injuries suffered by Herzog, we find that an award for general damages of $62,500.00 was the lowest amount which was reasonably within the discretion of the trier of fact.
For the foregoing reasons, the judgment on appeal is amended to reflect that the plaintiff Christopher M. Herzog is granted general damages in the |10amount of $62,500.00. In all other respects the judgment is affirmed. Costs are taxed to Allstate.
AFFIRMED AS AMENDED.

. Sly v. Morris, 99-884 (La.App. 5th Cir. 1/25/00), 750 So.2d 1163, citing Theriot v. Allstate Ins. Co., 625 So.2d 1337 (La.1993) and Bostwick v. M.A.P.P. Industries, Inc., 97-791 (La.App. 5th Cir. 12/30/97), 707 So.2d 441.

. Orgeron v. Prescott, 93-926 (La.App. 5th Cir.4/14/94),636 So.2d 1033, citing Perniciaro v. Brinch, 384 So.2d 392, 395 (La.1980), and Lasha v. Olin Corp., 625 So.2d 1002, 1006 (La.1993).

. Orgeron v. Prescott, supra; Rutledge v. Tidewater Marine Service, Inc. 597 So.2d 1201, (La.App. 3rd Cir.1992); Nusloch v. Browning Ferris Services, Inc. 97-528 (La.App. 5th Cir. 11/25/97), 703 So.2d 794, Rubino v. Louisiana Stadium and Exposition Dist., 619 So.2d 738, (La.App. 4th Cir.1993).

. Dennis v. Finish Line, Inc. 99-1413 (La.App. 1st Cir.12/22/00), 781 So.2d 12; Peter v. Allstate Ins. Co. 563 So.2d 1309, (La.App. 3rd Cir.1990); Buffinet v. Plaquemines Parish Com'n Council, 93-0840 (La.App. 4th Cir.7/27/94), 645 So.2d 631.

. Richard v. Wal-Mart Stores, Inc. 29,926 (La.App. 2 Cir. 10/31/97),702 So.2d 79; writ denied 97-3002 (La.1998) 709 So.2d 744; Wimberly v. McCoy Tree Surgery Co. 33,761 La.App. 2 Cir. 8/25/00, 766 So.2d 729.