709 So.2d 915 (1998)
Nathanial JEANPIERRE, Jr. and Theresa K. Williams
v.
John MIKAELIAN and Quincy Mutual Insurance Company.
No. 97-CA-1850.
Court of Appeal of Louisiana, Fourth Circuit.
February 25, 1998.
Rehearing Denied March 31, 1998.
*916 Favret, Demarest, Russo & Lutkewitte, Anthony J. Russo, Dean J. Favret, New Orleans, for Plaintiff-Appellees Nathaniel Jeanpierre, Jr. and Theresa K. Williams.
Boris F. Navratil, Alan P. McGlynn, Navratil, Hardy & Bourgeois, Baton Rouge, for Defendants-Appellants John Mikaelian, Jr. and Quincy Mutual Fire Insurance Company.
Before KLEES and BYRNES, JJ., and JAMES C. GULOTTA, J. Pro Tem.
KLEES, Judge.
Plaintiff/appellees, Nathaniel Jeanpeirre and Theresa Williams (hereinafter "appellees") filed this lawsuit against defendants/appellants, John Mikaelian Jr., and Quincy Mutual Fire Insurance Company (hereinafter "appellants"). Appellees sought damages for medical expenses, pain and suffering, and property losses due to a vehicular collision caused by Mr. Mikaelian's failure to yield to oncoming traffic. The trial court found for the plaintiffs and awarded damages for past medical expenses; pain and suffering; punitive damages against Quincy for three counts of bad faith insurance practices; and expert witness and deposition costs. The appellants appeal the determination of fault for the accident as well as the determination of damages and penalties. Appellants also appeal several evidentiary rulings made by the trial court. After considering argument of counsel and reviewing the record, we affirm in part and reverse in part.

FACTS OF THE CASE AND DISPOSITION OF THE TRIAL COURT:
On August 19, 1995, plaintiffs Nathaniel Jeanpierre, Jr. ("Jeanpierre") and Theresa K. Williams ("Williams") were traveling westbound on McArthur Boulevard, a four lane avenue divided by a median in New Orleans. At the same time, John Mikaelian, Jr., ("Mikaelian") was traveling northbound on Halsey Street. Traffic on Halsey must stop for traffic on McArthur. Mikaelian stopped at the stop sign, proceeded through the first two eastbound lanes, past the median, and was proceeding through the outer westbound lane when he collided with the car driven by Williams and owned by Jeanpierre. Jeanpierre was a passenger in the car. The trial court found Mikaelian to be 100% at fault for not yielding to Williams and the oncoming traffic in the westbound lanes of McArthur. Mikaelian admitted at trial that he failed to stop at the median and did not look to see if any other vehicles were coming. Williams was driving between twenty and thirty mph in a thirty-five mph zone.
Although Jeanpierre and Williams reported only minor cuts and bruises at the scene of the accident, they consulted Dr. Mary Mathai several days later complaining of *917 neck, back and knee pains. Dr. Mathai treated Jeanpierre for 5 1/2 months after the accident for cervical and thoracolumbar strains. Jeanpierre stated that his pain continued after he was discharged from Dr. Mathai's care. Williams was diagnosed with a cervical and lumbar strain, abrasions and bruises. She was treated for about six months and released. Medical expenses for Jeanpierre amounted to $1,488.00 and those for Williams came to $1,572.00.
In addition to awarding past medical expenses, the trial court awarded pain and suffering in the amount of $7,500.00 to each of the plaintiffs. Furthermore, the lower court determined that Quincy Mutual Insurance Company ("Quincy Mutual"), the defendant's insurer, had acted in bad faith by not paying Jeanpierre within thirty days of settlement for the damages to his car. La.-R.S. 22:1220(B)(2). The trial court also determined that Quincy Mutual was negligent in not fairly and promptly adjusting the claims and making a reasonable offer to settle. La.-R.S. 22:1220(A). Quincy Mutual was penalized for two counts under the latter subsection pursuant to its dealings with both the plaintiffs. After a hearing on a Motion for Partial New Trial for the Sole Issue of Clarification of Penalties, the judge determined that Jeanpierre should be awarded $8,988.00 and that Williams should collect $9,072.00. Jeanpierre would also receive $10,000.00 for Quincy's two separate violations of La.-R.S. 22:1220(A); (B)(2). Williams was awarded $5,000.00 for Quincy's violation of the same statute. La.-R.S. 22:1220(A). All costs of the proceedings plus judicial interest were also tolled against the defendants. Finally, on a Rule to Tax Costs, the judge awarded the plaintiffs $500.00 for the costs of Dr. Mathai's expert testimony and $229.50 in deposition charges.

I. WHETHER THE JUDGE COMMITTED MANIFEST ERROR IN FAILING TO ASSESS SOME DEGREE OF FAULT TO THERESA WILLIAMS.

It is axiomatic that a court of appeal may not set aside determinations of a lower court or a jury absent a clear showing of manifest error. See Rosell v. ESCO, 549 So.2d 840 (La.1989). In order to reverse a lower court holding, the appellate court must find: 1) that no reasonable factual basis exists for the finding of the trial court; and 2) that the record establishes that the finding is clearly wrong. See Oliver v. Allstate Ins. Co., 95-306 (La.App. 3 Cir. 10/4/95), 663 So.2d 207, 209 (citing Mart v. Hill, 505 So.2d 1120, 1127 (La.1987)). The ultimate question to be asked is "not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." Olivier, at 209 (citing Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La.1992)).
Appellants contend that the trial court committed reversible error when it determined that Mikaelian was solely at fault for causing the accident at issue. Appellants contend that Williams breached a duty of care that is imposed on drivers proceeding along favored streets which requires them to maintain a proper lookout for crossing vehicles and to avoid colliding with them, if possible. See Delphen v. DOTD, 657 So.2d 328 (La.App. 4 Cir.1995), writ denied, 663 So.2d 717 (La.1995). This Court, however, can find no such mitigating circumstances in the record to justify reversing the judgment of the trial court. Williams was traveling below the speed limit at the time of the accident and was otherwise following traffic laws. Mikaelian admitted at trial that he failed to stop or even look to his right when he crossed the median and two lanes of westbound traffic. The property damage to Jeanpierre's vehicle further supports the determination that fault and liability were properly attributed to Mikaelian.

II. WHETHER THE TRIAL JUDGE COMMITTED MANIFEST ERROR IN ACCEPTING PLAINTIFFS' SUBJECTIVE COMPLAINTS AS EVIDENCE OF THEIR INJURIES; ALTERNATIVELY, WHETHER EXCESSIVE COMPENSATORY DAMAGES WERE AWARDED FOR MINOR, TRANSIENT, SOFT-TISSUE INJURIES.

In reviewing the measure of general and special damages awarded to a plaintiff, the trial court must affirm the trier of fact's *918 exercise of discretion when that determination is not clearly excessive and unsubstantiated by the evidence in the case. The inquiry that this Court must make is "whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the `much discretion' of the trier of fact." Youn v. Maritime Overseas Corp. et al, 623 So.2d 1257, 1260 (La.1993). This Court has determined the specific level of scrutiny to be applied to damage awards in Quirk v. Board of Supervisors of Louisiana State Univ., 629 So.2d 1345, 1347 (La.App. 4 Cir.1993). Here, this Court remarked that "review of a damage award requires a showing that the trier of fact clearly abused the great discretion accorded the trier in awarding damages and, in effect, the award must be so high or low in proportion to the injury that it `shocks' the conscience." Quirk, at 1347.
In this case, Jeanpierre incurred $1,488.00 in medical bills over the 5 1/2 months of treatment under Dr. Mathai. Dr. Mathai testified that Jeanpierre suffered back spasms and pain and underwent physical therapy and medication. Williams complained of neck and back pain over the 5 1/2 months of her treatment. Her medical expenses were $1,572.00. Both stated they were still experiencing pain after being released from care. The trial court awarded $7,500.00 to each plaintiff in general damages for pain and suffering. We find no reason to believe that a collision would not cause medical problems and some residual pain and trauma. Whiplash and back pain commonly result from a full impact blow, such as a car crash. These injuries typically lack "objective" signs of harm and the plaintiffs' sworn statements as to their injuries, as well as documented medical treatment and therapy, must be accepted by the court as true.
In reviewing the proportion of the general damages award, it is clear from other similar factual situations that the trial court did not award an overly excessive amount. Louisiana courts have awarded similar quantum awards in like circumstances. In Quirk, this Court affirmed the award of $17,500.00 in general damages to a university student who suffered a neck injury and cervical strain after she fell from a collapsed chair. See Quirk, at 1347. In Friedmann v. Landa, 573 So.2d 1255 (La.App. 4 Cir.1991), the plaintiff suffered soft tissue injuries in her back and neck and was treated for over a year with recurrent pain in her neck and shoulder. This court affirmed her award of $35,000 in general damages. Finally, in Owens v. Anderson, 631 So.2d 1313 (La.App. 4 Cir.1994), this Court affirmed a $10,000 award of general damages to a plaintiff who sustained a short-lived cervical strain from a car accident.

III. WHETHER THE EVIDENCE JUSTIFIES AN AWARD OF PUNITIVE DAMAGES AGAINST QUINCY MUTUAL UNDER LSA-R.S. 22:1220.

The trial court granted lodged penalties against Quincy Mutual for three separate violations of LSA-R.S. 22:1220, each in the amount of $5,000.
Louisiana Revised Statute 22:1220 states in pertinent part:
A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer constitutes a breach of the insurer's duties imposed in subsection A:
....
(2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or $5,000.00, whichever is greater....
*919 Quincy Mutual was found to have violated LSA-R.S. 22:1220(B)(2) concerning its failure to timely send Jeanpierre his settlement check. Furthermore, Quincy Mutual was found to have violated subsection (A) respecting its claims settlement procedures with both Jeanpeirre and Williams. This statute has been construed to be penal in nature and should be strictly construed. See Holt v. Aetna Cas. & Sur. Co., 28,450, 28,451, 28,452, (La.App. 2 Cir.1996), 680 So.2d 117, rehearing denied, writ denied 96-2512 (La.12/6/96), 684 So.2d 937, writ denied, 96-2523 (La.12/6/96), 684 So.2d 938. However, the statute should not be invoked when the insurer has a reasonable basis for denying coverage. See Matter of Hannover Corp. of America, C.A.5 (La.)1995, 67 F.3d 70; Spear v. Tran, 96-1490 (La.App. 4 Cir.1996), 682 So.2d 267, rehearing denied, writ denied 96-3024 (La.2/7/97), 688 So.2d 500.
This statute has recently been thoroughly studied by the Louisiana Supreme Court in Theriot v. Midland Risk Ins. Co., 95-227 (La.App. 3 Cir. 11/2/95), 664 So.2d 547, writ granted 95-2895 (La.2/2/96), 666 So.2d 1095, rev'd. 95-2895 (La.5/20/97), 694 So.2d 184. Here, the plaintiff sought compensation for injures she suffered and property damage sustained in a three car collision of which she was not liable. Because the two other insurance companies could not determine the allocation of fault between them for plaintiff's damages, she filed suit under LSA-R.S. 22:1220 and other statutes. See id. at 185. The Court held that the good faith duty owed by insurers creates a right of action directly in favor of third parties claimants, but only for those specific acts enumerated in the statute. See id. at 193; see also Armstrong v. Rabito, 95-0659, 95-0660 (La.App. 4 Cir. 10/26/95), 663 So.2d 512. In Theriot, the court explained,
"Our interpretation, which limits the conduct for which damages and penalties can be sought to the specific acts listed in subsection B of the statute, is more in harmony with the intent evidenced by the legislature in its contemporaneous 1990 amendments to the related penalty provisions in LSA-R.S. 22:658." Id. at 189.
...
"Having separated § 1220 from its original cross-reference to the proposed limited version of § 1214(14), it was natural and structurally appropriate for the legislature to introduce the newly created private cause of action with a statement of policy and introductory language in Subsection A. Had the legislature intended to create new independent broad duties in Subsection A and to give only an illustrative list of breaches in Subsection B, it could easily have cross-referenced the much longer list of practices retained in La. R.S. 22:1214(14), thereby providing many more illustrations of undesirable conduct." Id. at 192.
The analysis of this statute in the Theriot case is applicable to the circumstances at issue before us. The Theriot court examined the nature of "claimant" and "insured" as they are used in the statute. The court found that third party claimants are empowered under the act, but are limited only to damages that fall within the limited categories set out in subsection (B) of the statute. Any other construction would constitute a "radical departure from accepted principles of insurance law." Id. at 192-193. Under this interpretation of the statute and legislature intent, this Court is bound by the holding that there can be no award of penalties to claimants based upon subsection (A). The trial judge stated in his Reasons for Judgment, "[Q]uincy Mutual is in bad faith for violating their affirmative duty to adjust claims fairly and promptly and make a reasonable effort to settle. The adjuster concluded his investigation in December assessing at least 50% of fault to each party, yet, Quincy Mutual offered the plaintiffs nothing." Without any additional examples of misconduct or flagrant bad faith by Quincy Mutual and where litigation was reasonably foreseeable, this Court is unable to affirm the trial court's award of penalties under § 22:1220(A) to both plaintiffs. We are bound by the holding in Theriot and Rabito. Consequently, the awards of $5,000.00 to Ms. Williams and to Mr. Jeanpeirre are reversed.
The third violation of § 22:1220(B)(2) is affirmed. The trial court judge stated in the Reasons for Judgement:

*920 "Quincy Mutual agreed to pay the plaintiff's property damage in September of 1995. The damage was not actually paid until after January 5, 1996. The defendant failed to pay within the 30 days after its own agreement was reduced to writing and considering the totality of the facts/circumstances in this matter, said failure is arbitrary and capricious."
This violation falls directly under the statutory examples in subsection (B). Quincy Mutual pleaded that the failure to get the check to Jeanpeirre was due to a mistake in addressing the envelope; however, after the settlement was determined, over three months elapsed before the plaintiff actually received his check. This is unacceptable and the trial court judge was correct in his assessment of penalties.

IV. WHETHER THE TRIAL JUDGE COMMITTED ERROR IN REFUSING TO ADMIT INTO EVIDENCE PLAINTIFFS' HOSPITAL RECORDS, WHICH REFLECTED ON THEIR CREDIBILITY; AND IN REFUSING TO ADMIT A PHOTOGRAPH OF DEFENDANT MIKAELIAN'S CAR.

Appellants contend the trial court's ruling that the plaintiffs' prior medical history was not admissible was in error. Appellants assert that these records indicate that the plaintiffs veracity should be called into question due to prior drug addiction. In sustaining an objection to the admissibility of these records at trial, the judge indicated that he felt that the records were totally irrelevant. See Trial Transcript, p. 58. We agree.
The standard that must be applied to this evidentiary ruling is whether the trial court judge abused the wide discretion afforded him in determining the relevancy of evidence. See Tramontin v. Glass et al., 95-744 (La. App. 5 Cir. 1/30/96), 668 So.2d 1252. The possibility that this information could call into question the veracity of the plaintiffs in stating their injuries and damages claims is weak, at best. We are of the opinion that the trial court judge reasonably exercised his discretion in refusing to admit the plaintiffs' prior hospital records.
Secondly, appellants allege that the trial judge's exclusion of a photograph of the defendant's car was reversible error. The trial judge excluded this photograph at trial because the defendants had not turned it over in discovery. This Court sees no reason in upsetting the ruling of the trial court on this issue.

V. WHETHER THE TRIAL JUDGE ERRED IN AWARDING AN EXPERT WITNESS FEE TO DR. MARY MATHAI; AND ALTERNATIVELY, WHETHER THE FEE AWARDED WAS EXCESSIVE.

The appellants further contend that the trial court's judges award of expert witness fees for the costs for Dr. Mathai's expert witness fees and for taking her deposition was an abuse of discretion. Review of the trial court on the award of costs is governed by the manifestly erroneous standard. Young v. State Farm Fire & Casualty Ins. Co., 426 So.2d 636, 645 (La.App. 1 Cir.1982), writs denied 433 So.2d 148, 171 (La.1983). Factors that the trial court should take into account in determining these costs are: (1) the time spent testifying; (2) time spent preparing for trial; (3) time spent away from regular duties while waiting to testify; (4) the extent and nature of the work performed; and (5) the knowledge, attainments, and skill of the expert. See Albin v. Illinois Central Gulf Railroad Co., 607 So.2d 844, 845 (La. App. 1 Cir.1992). The expert is entitled to only reasonable expenses. Mack v. Transport Ins. Co., 577 So.2d 112, 119 (La.App. 1 Cir.1991).
In this case, the trial court awarded the plaintiffs $500 for Dr. Mathai's expert testimony and $229.50 for the transcription of her deposition. This amount seems reasonable in light of the fact that Dr. Mathai's testimony was the only evidence that medically substantiated the pain experienced by the plaintiffs. Her statements were helpful to the trial court in determining the amount of general damages sufficient to reasonably compensate the plaintiffs. The determination of $729.50 for expert witness costs is affirmed.
*921 Accordingly, for the reasons expressed above the judgment against Quincy Mutual for penalties under LSA-R.S. 22:1220(A) in the amount of $5,000.00 each to Jeanpierre and Williams is reversed. In all other respects the judgment is affirmed.
REVERSED IN PART AND AFFIRMED.