2THOMAS F. DALEY, Judge.
Plaintiffs, Carol and Billy Entrekin, appeal the quantum in a damage award in their favor and against Allstate Insurance Company for injuries Mr. Entrekin sustained in a car accident on May 1, 2000, in the parking lot of Tastee Donuts on Bara-taría Boulevard. In a bench trial, the trial judge awarded Mr. Entrekin $9,500.00 in damages and Mrs. Entrekin $1,000.00 for loss of consortium. The Entrekins appeal, arguing that the awards were inadequate.
The discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Youn v. Mari *846 time Overseas Corp., 623 So.2d 1257 (La.1993).
The plaintiff argues that the trial court’s award of $9,500.00 was grossly inadequate because he will experience neck pain and headaches related to this accident for the rest of his life, according to Dr. Ribando.
The record shows that Billy Entrekin was 76 years old at the time of the accident, which occurred in a parking lot. Jeanne Powell backed into Entrekin’s vehicle. Mr. Entrekin testified that he immediately had muscle spasms, cervical [ spain, and headaches that were severe. Dr. Russell Ribando, plaintiffs physician of some 30 years, treated Mr. Entrekin for this accident. Dr. Ribando testified that Mr. Entrekin had a pre-existing, though nonsymptomatic, arthritic development that was made symptomatic by this accident. Dr. Ribando felt that Mr. Entrekin would have some pain for the rest of his life, and though some of this might be related to the normal aging process, Mr. Entrekin had no pain before the accident.
Dr. Ribando first saw Mr. Entrekin on May 8, 2000. He reported severe headaches and muscular pain in his neck.. Dr. Ribando’s notes indicate that he diagnosed cervical spine muscular sprain and headaches, and prescribed analgesics for pain, rest, a heating pad, and recommended weekly visits for follow up. Mr. Entrekin returned on May 15, 22, 29, June 12, 26, July 10, 24, August 28, September 18, October 16, and was discharged on November 13, 2000. Throughout this time Mr. Entrekin treated conservatively with analgesic pain medication, rest, and heat. Improvement is noted in each visit, with July 10 being the last time spasms were noted.
Mr. Entrekin returned to Dr. Ribando on December 18, with a recurrence of the neck pain and headaches. Spasms were again noted in the cervical muscles. He saw Dr. Ribando again on February 5, 2001, with the same complaints, and on April 2, 2001. In the April notes, Dr. Ribando advised him to see a neurologist, but he refused, and continued with conservative treatment. Two more visits are noted, June 4 and August 6, 2001, wherein the doctor notes that plaintiff continued to complain of headaches and neck pain. The notes do not indicate whether spasms were present. Dr. Ribando advised Mr. Entre-kin that his treatment would be symptomatic only.
On September 17, 2001, Mr. Entrekin returned to Dr. Ribando with the same pain complaints, but this time also reporting lower back pain for the first time. Conservative treatment was continued. He returned to the doctor on November 19, |42001, reporting no improvement, but again refused to see a neurologist or neurosurgeon. He saw Dr. Ribando again on January 7, 2002, and February 25, 2002. At that visit, Dr. Ribando told the plaintiff that his condition was probably “stationary” and he might even get worse as he ages. The records show two more visits to Dr. Ribando, in March and April of 2002, wherein plaintiff continued to have neck pain and headaches, and spasms and tenderness of his cervical muscles.
The deposition of Dr. Michael McSween was entered into evidence. Dr. McSween was Mr. Entrekin’s family physician through his HMO, he explained. Dr. McSween treated Mr. Entrekin during this time for headaches, sinus problems, and followed up his previous surgery for colon cancer. Dr. McSween had no record of the May 2000 accident, but did note that Mr. Entrekin reported an accident in March of 1999.[1] Dr. McSween saw Mr. Entrekin on May 25, 2000 for a check up. *847 Mr. Entrekin never reported any headaches or neck pain at this visit. He next saw plaintiff in September of 2000, when Mr. Entrekin complained of “headaches for about one week,” but did not mention a car accident. He did not complain of neck pain at this visit. Dr. McSween noted that Mr. Entrekin said that Vicodin helped his headache pain. Dr. McSween did not prescribe the Vicodin.
Dr. McSween saw Mr. Entrekin again on October 28, 2000, when he complained of some visual problems relative to a cataract, and sinus trouble. Dr. McSween’s notes contain no mention of headaches or neck pain. On November 18, 2000, Mr. Entrekin reported headaches relative to the accident in March of 1999, and reported that he had had a CAT scan, which was normal. He did not mention neck pain at this visit. On December 7, 2000, Dr. McSween saw Mr. Entrekin relative to medical clearance for cataract surgery, and he asked for a refill of his Vicodin, which the doctor gave him, but there was no mention of neck pain at this visit.
|sDr. McSween also saw Mr. Entrekin on December 27, 2000 for a sore throat, but his notes indicate he also diagnosed degenerative joint disease and prescribed some arthritis medicine. The doctor testified that if a patient had reported neck pain, he would have included it in his appointment notes.
The defendants argue that the damage award should not be disturbed. They argue that this was a minor side-swipe type accident in a parking lot. The trial court observed Mr. Entrekin on at least two occasions[2] and was able to judge the effect of his injuries. They further argue that Mr. Entrekin never reported this accident or neck pain to Dr. McSween, who treated him during this time period. (Mr. Entre-kin stated that while Dr. McSween was his “HMO” doctor, Dr. Ribando was his long time treating physician whom he trusted.) The defendants further highlight Dr. Ri-bando’s testimony, who felt that some of plaintiffs pain was due to the normal aging process, and who discharged the plaintiff in November of 2000, six months after the accident. Defendants argue that $9,500.00 is adequate for a soft tissue injury of six months.
Bearing in mind the trier of fact’s vast discretion in awarding damages, and considering all of the evidence, we find that the damage award to .Mr. Entrekin was adequate and was not so low as to be an abuse of discretion. Plaintiff cites the case of Ganucheau v. Winn Dixie LA., Inc., 99-432 (La.App. 5 Cir. 11/10/99), 746 So.2d 812. That case is distinguishable. Mrs. Ganucheau sustained serious multiple orthopedic and gastrointestinal injuries that required at least one surgery, with another recommended to treat complications. There was no question that her knee replacement, back injuries, and gastrointestinal bleeding were very debilitating and related to the slip and fall. In the instant case, Mr. Entrekin reported neck pain and headaches to one treating physician, but not another. Dr. Ribando did find objective evidence of injury, muscular spasms, and had | (¡recommended that plaintiff see a neurologist at one time, but plaintiff refused. There was no evidence that his condition has propelled him to see a neurologist or will in the future. Dr. Ribando discharged Mr. Entrekin after six months, though plaintiff did continue to report headache and neck pain after that date.
Under the circumstances and record evidence, the trial judge apparently felt that Entrekin suffered a six month soft tissue *848 injury, and we agree that the evidence reflects that. The award of $9,500.00 is appropriate for this injury. See Medice v. Delckamps, Inc., 96-1868 (La.App. 4th Cir.4/30/97), 694 So.2d 528 [$6,000 for three months soft tissue injury]; Jeanpierre v. Mikaelian, 97-1850 (La.App. 4th Cir.2/25/98), 709 So.2d 915 [$7,500 for five and a half month soft tissue injury and $7,500 for six month soft tissue injury]; Howard v. Derokey, 98-0893 (La.App. 4 Cir. 2/10/99), 729 So.2d 654; Marie v. Allstate Ins. Co., 99-225 (La.App. 5 Cir. 8/31/99),742 So.2d 969.
Plaintiffs argue that $1,000.00 is not enough to compensate Mrs. Entrekin for having her relationship with her husband compromised over the balance of his life. Mrs. Entrekin testified regarding Mr. Entrekin’s pain and reduced activities with his grandchildren, and said that she occasionally had to socialize without him. We find that the trial court’s award to her was appropriate and not so low as to be an abuse of discretion. See Marie v. Allstate Ins. Co., supra.
Accordingly, we affirm the judgment of the trial court.
AFFIRMED.

. Dr. McSween testified that he wrote it in his notes as "3/99.”

. The trial was bifurcated. Liability was found on a previous date, and was not appealed.